IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CHARLES JORDAN**                                                         **PLAINTIFF**

v.                                                     No. 4:24CV9-JMV

**TRACY MACDONALD, ET AL.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Charles Jordan, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1]

The plaintiff alleges that the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment by placing him in unconstitutionally harsh living conditions. The defendants have moved [29] for summary judgment, and the plaintiff has responded [31]. The court issued a memorandum opinion [34] and final judgment [35] on June 2, 2025, granting the defendants' summary judgment motion and dismissing the case.

However, the plaintiff moved [36] for reconsideration, arguing, *inter alia*, that briefing was incomplete because he had attempted to submit evidence (in the form of photographs) in support of his motion, but the court did not receive or consider that evidence. The court granted the plaintiff's

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

motion, setting deadlines for the parties to submit additional briefing and evidence. Doc. 37. It appears that the plaintiff did not provide the photographs during additional briefing; they do not appear on the docket, and the court can find no record of receiving them. *Id*. Briefing is now complete, and the matter is ripe for resolution. For the reasons set forth below, the motion [29] by the defendants for summary judgment will be granted, and judgment will be entered in their favor.

## Factual Allegations

The plaintiff's allegations involve his stay at the Mississippi State Penitentiary from February 24, 2022, through January 26, 2024 (the date of filing). He alleges that from February 24, 2022, to January 11, 2023, he was denied laundry services. Doc. 1, p. 5. Jordan alleges that because of the lack of services, he was forced to wash his laundry with hand soap in the toilet located in his cell. *Id*. He further alleges that his canteen was destroyed as a result of a mouse and roach infestation – and that flies and mosquitoes are prevalent during hot months. *Id*. He alleges that from February 24, 2022, to January 16, 2023, cell doors were locked during dayroom call and that he was forced to urinate outside or in the shower. *Id*. Next, Jordan states that birds fly around the feeding room and other areas, leaving feces on the tables. *Id*. He alleges the defendants provide inadequate supplies to clean the cell area. *Id*. Jordan also claims that Unit 29 has no air conditioning and that protective custody inmates are not permitted to have personal fans for cooling, and they have been denied "freeze cups." *Id*. He also alleges that he was denied family visitation from June 12, 2023, to October 2023, and the denial of visitation violated MDOC Standard Operating Procedures. *Id*. Finally, the plaintiff alleges that he is being housed in the same unit as a violent and aggressive inmate. Doc. 7. For relief, the plaintiff seeks an order for the defendants to correct the conditions alleged in his complaint. *Id*. He also seeks monetary damages, including $15,000 from each defendant.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### Failure to Exhaust Administrative Remedies: Water Leaks; Lack of Air Conditioning; Access to Urinals; Housing Near a Violent Inmate; and Lack of Adequate Cleaning Supplies

The plaintiff has not exhausted his administrative remedies as to his allegations regarding water leaks, lack of air conditioning, access to urinals, being housed near a dangerous inmate, and lack of adequate cleaning supplies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)(

under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its correctional facilities. MDOC has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must

complete two steps to exhaust the ARP process.[2] *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id*. The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

---

[2] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[3] *Id.* If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[4] *Id.* If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

In this case, the plaintiff has not exhausted administrative remedies as to the following claims: (1) water leaks; (2) lack of air conditioning; (3) access to toilets; (4) being housed near a violent inmate; and (5) lack of adequate cleaning supplies. He acknowledges his failure to exhaust the first three claims in his response [31] to the defendants' motion for summary judgment, stating, "Plaintiff['s] claims of housing conditions, air conditioning, and access to urinals did not [require] …

---

[3] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

[4] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id.* Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id.* If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

exhaust[ion]" because those issues "[were] disclosed to defendant Cain and [were] assigned to MacDonald to be addressed." Doc. 31, p. 1. However, as discussed in detail above, the PLRA requires a *pro se* prisoner plaintiff to fully exhaust all available administrative remedies before seeking relief in federal court.

In his additional briefing [37], the plaintiff also argues that other inmates filed grievances regarding the same issues; however, each plaintiff must pursue his *own* grievance to satisfy the PLRA's exhaustion requirement. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009). Hence, the plaintiff's attempts at informal resolution of these issues – as well as his reliance on the grievances of other inmates – do not constitute exhaustion as contemplated by the PLRA.

In addition, the plaintiff alleges in a supplement [7] to his complaint that, on March 5, 2024, a violent inmate, Eric Edwards, was housed near him and other inmates. Doc. 7, p. 1. After Edwards attempted to assault another inmate in the early morning of March 6, 2024, he was removed from the zone, but then returned less than 8 hours later. *Id.* at 1-2. The plaintiff has not alleged that he filed a prison grievance regarding the issue; the supplement to the complaint was postmarked March 11, 2024, and the supplement was filed in this court on March 13, 2024 – less than a week after the incident – and far too short a time for the plaintiff to have completed the prison grievance process. Hence, the plaintiff did not exhaust his administrative remedies as to his claim regarding the violent inmate *before* filing the supplement to his complaint.

Finally, the plaintiff did not complete the grievance process as to his allegations regarding lack of sufficient cleaning supplies. *See* Doc. 29-2, p. 26 (cleaning supplies grievance).

As such, the plaintiff did not complete the grievance process as to his allegations regarding water leaks, lack of air conditioning, access to urinals, lack of adequate cleaning supplies, and being housed near a violent inmate. Hence, these allegations must be dismissed without prejudice for failure

to exhaust administrative remedies.

**Defendants Are Entitled to Qualified Immunity**

The defendants in this case are shielded from liability under the doctrine of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Because the defendants have asserted qualified immunity in good faith, the plaintiff bears the burden of showing a genuine dispute of material fact on that issue. *See Joseph v. Bartlett*, 981 F.3d 319, 328–29 (5th Cir. 2020).

To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir. 1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Further, the court "must frame the constitutional question with specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019). It is not enough to point to "general rules set forth in" existing precedents: General rules "do not by themselves create clearly established law

outside an obvious case." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quotation omitted); *see Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, *but existing precedent must have placed the statutory or constitutional question beyond debate.*" (emphasis added)).  The court will also "assume without deciding that [Fifth Circuit] precedent," as opposed to Supreme Court precedent, "could, in an appropriate case, clearly establish the law." *Cleveland v. Bell*, 938 F.3d 672, 677 (5th Cir. 2019).

As discussed below, the defendants may invoke qualified immunity because the exhausted allegations (and the unexhausted allegation regarding cleaning supplies) fail to show a violation of clearly established federal law.[5]  As such, the defendants are cloaked with qualified immunity as to these claims.

### Failure to State a Claim:  General Prison Conditions as to Denial of Visitation, Vermin Infestation, Denial of Laundry Services, and Insufficient Cleaning Supplies

For the reasons set forth below, the plaintiff has not alleged a valid § 1983 claim as to the general conditions of his confinement:  denial of visitation, vermin infestation, denial of laundry services, and inadequate cleaning supplies.[6]  "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted).  "Inmates cannot expect the amenities, conveniences, and services

---

[5] As discussed below, the plaintiff's allegation regarding washing his laundry in the toilet does not set forth the violation of a constitution right, as it fails to state a valid claim for § 1983 relief.  In addition, that allegation is not clearly established because there is little, if any, binding authority on this point.

[6] Claims regarding general conditions of confinement require fact-specific analysis.  As such, the court must often look to authority from other federal circuits to find sufficiently similar facts for analysis.

of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

In addition, to prove a constitutional violation under 42 U.S.C. § 1983, the plaintiff must show that prison officials were deliberately indifferent to his health or safety. *Id*. Both the United States Supreme Court and the Fifth Circuit Court of Appeals have held that prison officials' consistent remedial efforts undermine an inmate's claim of deliberate indifference:

> [P]rison officials' preventative measures, mitigation efforts, and ongoing maintenance inside prisons—pest control and non-smoking policies, for example—generally refute claims of deliberate indifference. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 36 (1993) ("Indeed, the adoption of the smoking policy … bears heavily on the inquiry into deliberate indifference."); *Todd v. Hawk*, 263 F.3d 162, 162 (5th Cir. 2001) (… prison officials did not act with deliberate indifference because they did not disregard the risk of smoking, but took "reasonable measures to abate it" … ). By taking general measures, *such as employing pest control*, instituting repairs, and enforcing a non-smoking policy, prison officials do not disregard risks, but demonstrate that they "took reasonable measures to abate it." *See Farmer*, 511 U.S. at 847.

*Brown v. Townsend*, No. 6:21CV432, 2025 WL 715747, at *4 (E.D. Tex. Jan. 17, 2025), *report and recommendation adopted,* No. 6:21-CV-00432, 2025 WL 712634 (E.D. Tex. Mar. 5, 2025) (emphasis added).

**Denial of Visitation**

Jordan alleges that the defendants denied his visitation privileges in violation of MDOC policy. As an initial matter, "a prison official's failure to follow the prison's own ... regulations does not constitute a [constitutional] violation." *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)). In addition, the Fifth Circuit has "repeatedly held that for convicted prisoners, visitation privileges are a matter subject to the discretion of prison officials." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999). In short, "[i]nmates possess no constitutional right to visitation privileges." *Id*. As such, the

allegation regarding denial of visitation does not support Jordan's claim that prison conditions were unconstitutionally harsh.

**Vermin Infestation**

Jordan alleges that various pests, such as flying insects, mice, and roaches infest inmates' living spaces – and have eaten and contaminated food he has bought from the prison canteen. Doc. 1, p. 5. In addition, he alleges that birds find their way into the eating area and a nearby walkway, leaving their droppings and rendering those areas unsanitary. *Id*.

In response, Warden McDonald provided an affidavit reflecting that MSP maintains a routine pest control schedule. *See* Exh. A, Declaration of Warden Tracy McDonald. The affidavit states that pest control treatments are performed monthly.[7] *Id*. Jordan's ARP file shows that pest control treatments, indeed, follow a monthly schedule, though, as he has noted in his response to the summary judgment motion and additional briefing, there were gaps in pest control service from time to time. Exh. B, Plaintiff's ARP File, at p. 28; Doc. 38.

In his response [31] to the defendants' summary judgment motion, Jordan does not dispute that the defendants have implemented measures to mitigate the vermin problems; instead, he argues that the measures are ineffective. However, the presence of insects and pests in a rural prison in the Mississippi Delta does not, alone, establish a constitutional violation. *See, e.g., Alex v. Stalder*, 73 F.App'x 80, 2003 WL 21756781 (5th Cir. June 24, 2003) (fact that snake came into prisoner's cell, and that he had been bitten by ants and spiders, did not establish an Eighth Amendment violation and the case was dismissed as frivolous); *Benjamin v. Gusman*, civil action no. 17-07014, 2018 WL 1448759 (E.D. La., February 22, 2018), Report adopted at 2018 WL 1419870 (E.D. La., March 22, 2018)

---

[7] The exhibits referenced in this memorandum opinion may be found attached to the defendant's Motion for Summary Judgment.

("mere presence of spiders or such similar pests does not rise to the level of a constitutional violation" even though plaintiff was bitten). Given the defendants' ongoing, though imperfect, efforts to combat the problem of vermin, under the Supreme Court and Fifth Circuit precedent referenced in *Brown v. Townsend, supra*, these allegations fail to state a constitutional claim of deliberate indifference.

**Denial of Laundry Services**

The plaintiff alleges that the defendants did not provide him – or other Unit 29 Protective Custody ("PC") inmates – with laundry services from February 24, 2022, until January 11, 2023 – nearly eleven months. Doc. 1, p. 5. He notes in his response to the defendants' motion that, though the laundry truck periodically came to his building, no laundry staff collected laundry from his unit. Doc. 38.

He further alleges that PC inmates resorted to washing their laundry in their cell toilets during that time. Doc. 1. He alleges that he is issued a small bar of soap each week and does not have enough soap per week to both take a shower and wash his laundry. Thus, he may take showers one week and do laundry the next, but not both in the same week. He has not stated that he was unable to wash his laundry in the sink in his cell – or was unable to obtain additional soap from the canteen. Nor did he allege that washing his laundry in the toilet caused him injury. *Id*.

Requiring inmates to wash their personal articles of clothing with bar soap does not violate the Eighth Amendment. *Gates v. Cook,* 376 F.3d 323, 342 (5th Cir. 2004); *Green v. Ferrell,* 801 F.2d 765, 771 (5th Cir.1986) (no Eighth Amendment violation where inmates were provided with soap to wash their cloths in the sink); *Gibson v. Lynch,* 652 F.2d 348, 352 (3$^d$ Cir. 1981) (an inmate's complaints about the lack of clothing and laundry service for three months did not state an Eighth Amendment claim); *Dossett v. Neal*, No. 3:22-cv-104, 2023 WL 34626, at *2 (N.D. Ind. Jan. 3, 2023) (plaintiff's allegations did not "implicate constitutional concerns" where plaintiff alleged that "he had to wear the

same boxer shorts, socks, and t-shirt for five months without them being laundered" – but plaintiff's cell had sink and bar of soap); *accord Lancaster v. Tilton,* 2008 WL 449844 at 18 (N.D. Cal. 2008).

This is true even where, as here, an inmate uses the toilet to wash his clothes:

> [The plaintiff] alleged that he could wash clothing in a small wash basin and toilet in his cell, but maintained that this was insufficient. The conditions alleged by [the plaintiff], while not comfortable, were not so extreme as to state a viable Eighth Amendment claim.

*Johnson v. Texas Bd. of Crim. Just.*, 281 F. App'x 319, 322 (5th Cir. 2008) (not reported); *see also Miller v. Wathen*, No. CIV. 7:04-CV-136-O, 2009 WL 874601, at *2 (N.D. Tex. Apr. 2, 2009) (washing clothes in toilet is not a "deprivation of constitutional magnitude.") The plaintiff has not shown that this practice (washing his clothes in the toilet) involves the unnecessary and wanton infliction of pain – or discomfort that is grossly disproportionate to the crime for which he was convicted (exploitation of a child). Nor has he stated that he could not launder his clothes in his sink (rather than the toilet) – or whether he could have obtained additional soap from the prison canteen. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Hence, though washing laundry in a cell toilet is undoubtedly distasteful, Jordan has not shown any deprivation of constitutional magnitude regarding the lack of laundry service in Unit 29 Protective Custody housing.

**Insufficient Cleaning Supplies[8]**

Jordan alleges that "cleaning supplies are not adequately issued to sanitize the cells," Doc. 1, p. 5, "especially considering COVID." Doc. 1, p. 7. First, this claim rests on the plaintiff's bare

---

[8] Though Jordan submitted a prison grievance regarding lack of cleaning supplies, Doc. 29-2 at 26, neither he nor the defendants provided documentation showing that he completed the grievance process for that issue, as no response was included in the ARP documents attached to the defendants' motion for summary judgment – or to any documents the plaintiff has provided. *See* Doc. 29-2.

allegation, which is insufficient to sustain a § 1983 claim. *See Buckenberger v. Reed*, 342 F. App'x 58, 64 (5th Cir. 2009); *see also Arnaud v. Odom,* 870 F.2d 304, 307 (5th Cir. 1989) ("A plaintiff may not, however, plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought.") He did not allege what conditions caused the cells to be unsanitary; nor did he specify whether prison staff or others, rather than the inmates, periodically clean the cell areas. In addition, the plaintiff has not stated that he suffered any harm from the alleged inadequacy of cleaning supplies.

Indeed, Jordan's claims regarding inadequate cleaning supplies mirror those of a previous case in this court:

> [The plaintiff's] claim regarding inadequate cleaning supplies is likewise without merit. He complains that he would like more choice regarding his cleaning supplies, including supplies with more concentrated chemicals. He does not allege that he faces a substantial risk of harm resulting from the cleaning products he receives. Further, Mr. Bennet has not alleged that the defendants were deliberately indifferent regarding cell cleanliness. He concedes that he receives cleaning supplies, but not the supplies he would prefer. Put simply, prisoners possess no constitutional right to any particular cleaning supplies: "Prisoners simply are not entitled to the cleaning supplies of their choice." *Thomas v. Gusman*, Civ. Action No. 11–1424, 2012 WL 607970, at *4 (E.D. La. Jan. 27, 2012), adopted, 2012 WL 607698 (E.D. La. Feb. 24, 2012); see also *Simmons v. Gusman*, Civ. Action No. 14–1907, 2015 WL 151113, at *5 (E.D. La. Jan. 12, 2015); accord *Tallmore v. Hebert*, Civ. Action No. 07–1220, 2008 WL 2597939, at *3 (W.D. La. May 28, 2008) ("There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.") (adopted by Doherty, J., on June 26, 2008); *Ellis v. Crowe*, Civ. Action No. 09–3061, 2010 WL 724158, at * 16 (E.D. La. Feb. 19, 2010)(rejecting a prisoner's claim that the cleaning supplies provided were not "the right stuff"). These allegations fail to state a constitutional claim.

*Bennett v. Morris*, No. 4:12CV108-MPM-DAS, 2020 WL 60240, at *5 (N.D. Miss. Jan. 6, 2020). In this case, the plaintiff has not identified the supplies provided, the supplies he would like to use, whether or how often prison staff or inmate floor walkers assisted with cleaning, or whether additional supplies are available for purchase from the canteen. Jordan has not alleged sufficient facts to support his claim; nor has he alleged that the lack of supplies caused him to face a substantial risk of serious

harm. For these reasons, the plaintiff's allegation regarding the adequacy of cleaning supplies provided to him will be dismissed with prejudice for failure to state a constitutional claim.

Ultimately, considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the plaintiff's allegations regarding the general conditions of his confinement do not rise to the level of a constitutional violation. He has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

## Conclusion

For the reasons discussed above, the plaintiff's allegations regarding water leaks, lack of air conditioning, access to urinals, being housed near a violent inmate, and lack of adequate cleaning supplies must be dismissed without prejudice for failure to exhaust administrative remedies. In addition, his allegations regarding denial of visitation, vermin infestation, denial of laundry services, and inadequate cleaning supplies must be dismissed with prejudice for failure to state a claim upon which relief could be granted – and because the defendants are cloaked with qualified immunity. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 8th day of September, 2025.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE